IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DWAYNE J. MIDDLETON, )
        Plaintiff, )
)
vs. ) Case No. 17-cv-547-DRH-SCW
)
C/O BERKLEY, and )
MEDICAL DIRECTOR OF THE )
ILLINOIS DEPARTMENT OF )
CORRECTIONS, )
)
        Defendants.

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Acting *pro se*, Plaintiff Dwayne Middleton filed the present action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges that upon his entrance into the IDOC, he was denied medication necessary to treat his Tourette Syndrome. This matter is before the Court on Plaintiff's Motion for Preliminary Injunction. (Doc. 2). Due to the serious nature of Plaintiff's allegations, the undersigned set the Motion for an expedited hearing and instructed the Attorney General to file a response and provide the Court with Plaintiff's medical records. The undersigned has reviewed the Defendants' response and Plaintiff's records, and a hearing was held on the Motion on June 7, 2017. As such, this matter is ripe for disposition. As more fully articulated below, since Plaintiff is now

getting medication for his Tourette Syndrome and will be seen by a physician, the undersigned **RECOMMENDS** that the district judge **DENY** Plaintiff's Motion for Preliminary Injunction (Doc. 2).

## BACKGROUND

In his Complaint, signed on May 17, 2017 and filed by the Clerk of Court on May 23, 2017, Plaintiff alleges he suffers from Tourette Syndrome. (Doc. 1, p. 5). The Mayo Clinic describes Tourette's as "a disorder that involves repetitive movements or unwanted sounds (tics) that can't be easily controlled." *See* **The Mayo Clinic, TOURETTE SYNDROME,** *Overview*, http://www.mayoclinic.org/diseases-conditions/tourette-syndrome/home/ovc-2016362 3 **(last visited June 7, 2017)**. Indeed, on two occasions during the preliminary injunction hearing, Plaintiff exhibited what appeared to the undersigned to be episodes of involuntary motor tics.

Plaintiff alleges that upon his entry into Menard Correctional Center ("Menard") on April 28, 2017, he reported to prison staff that he suffered from Tourette Syndrome for which he needed medication, and was told that he would see the doctor three days later. (Doc. 1, p. 5). By the time Plaintiff submitted his Complaint on May 17, 2017, however, he still had not seen a doctor for his Tourette's and was not receiving medication. (*Id.*). Due to his lack of medication, Plaintiff alleges that on two occasions he fell, injuring his head and his right eyelid.[1] (*Id.*).

---

[1] Plaintiff also makes allegations of deliberate indifference aimed at a specific prison guard which are not

Plaintiff's May 17 Complaint was filed by the Clerk on May 23, 2017, and District Judge Herndon promptly conducted a merits review pursuant to 28 U.S.C. § 1915A on May 25, 2017. (Doc. 4). In that Order, Judge Herndon construed Plaintiff's Complaint as seeking injunctive relief, including preliminary injunctive relief. (*Id.* at 6). The Warden of Menard, Jacqueline Lashbrook, was added as a defendant in her official capacity for purposes of carrying out any ordered injunction. (*Id.*). This matter was then referred to the undersigned for prompt disposition. (*Id.* at 7). After setting the motion for hearing, and upon learning from the Attorney General's office that Plaintiff was being held in Menard only temporarily, the undersigned ordered the substitution of the Medical Director of the Illinois Department of Corrections in place of Warden Lashbrook for injunctive purposes. (*See* Doc. 16).

Sometime between his filing this lawsuit and June 2, 2017, Plaintiff was transferred from Menard to Sheridan Correctional Center ("Sheridan"). (*See* Doc. 15). Due to the unavailability of video conferencing on the day of the preliminary injunction hearing, the Court ordered that Plaintiff be brought to the undersigned's courtroom to appear for the hearing in person. (Doc. 13). For logistical reasons, shortly before the hearing date, Plaintiff was transferred back to Menard (Doc. 20), which is a closer distance to this Court than Sheridan. According to the medical records provided to the Court, Plaintiff was seen by a physician at Menard on June 6, 2017.

The following day, June 7, 2017, the Court held its hearing on Plaintiff's request

---

relevant to the disposition of the motion at-bar.

for a preliminary injunction. Plaintiff testified that before entering prison, he was on two medications: Seroquel[2] and Tegretol.[3] Tegretol is the medication taken to treat his Tourette Syndrome, and prior to taking Tegretol, Plaintiff had taken Haldol[4] to treat his Tourette's. Plaintiff testified that after entering Menard on April 28, 2017, he finally received Tegretol for his Tourette's on May 16, 2017, and is currently still receiving Tegretol. Though Plaintiff believes that the Haldol was more effective in treating his Tourette's, he acknowledged that he is better off taking Tegretol than not taking it. Plaintiff also testified that he was supposed to see a physician at Sheridan, but his appointment was superseded by his transfer to Menard after the Court's order that he appear for the preliminary injunction hearing. In addition, an Assistant Attorney General representing the IDOC Medical Director indicated his understanding that Plaintiff was to continue on his medication and was to see a physician subsequent to his return to Sheridan. According to Plaintiff, he has also received a low bunk permit guaranteeing him the bottom bunk of his cell. Plaintiff indicated he was content that he was being medicated and will be treated, and that he was not, at that time, asking the

---

[2] Seroquel is a brand name for the drug Quetiapine, which is used "alone or together with other medicines to treat biopolar disorder…and schizophrenia." **U.S. National Library of Medicine, PubMed Health, QUETIAPINE (BY MOUTH)**, **https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011909/ (last accessed June 8, 2017)**. Plaintiff testified that the Seroquel helped him sleep.

[3] Tegretol is a brand name for a drug called Carbamazepine. **U.S. National Library of Medicine, PubMed Health, CARBAMAZEPINE (BY MOUTH) https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009439/?report=details#brand_names (last accessed June 8, 2017).** It is an anticonvulsant used to treat certain types of seizures. *Id.*

[4] Haldol is a brand name for Haloperidol, which is a drug used to treat "nervous, emotional and mental conditions…[and] also used to control the symptoms of Tourette's disorder." **U.S. National Library of Medicine, PubMed Health, HALOPERIDOL (BY MOUTH), https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010537/?report=details#brand_names (last visited June 8, 2017).**

Court for any preliminary relief relating to his medication.

**ANALYSIS**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546.

To recover on the merits of his suit, Plaintiff will have to demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to

meet a substantial risk of serious harm — not to demand specific care. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. Accord *Greeno*, 414 F.3d at 653. Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, 414 F.3d at 652-53.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference is not negligence; rather it is more akin to intentional wrongdoing. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). The standard is criminal recklessness, and even gross negligence will not meet this standard.

*Id.* **at 481**.

As Plaintiff is receiving medication for his Tourette Syndrome, and the undersigned has no reason to believe he will stop receiving his medication, a preliminary injunction is not appropriate at this time. In fact, since he is now receiving Tegretol, Plaintiff himself indicated that he is not currently seeking preliminary injunctive relief from the Court. Even if Plaintiff had not disavowed his desire for preliminary relief, the Court could not grant such relief on the record before it. Plaintiff would not be able to demonstrate that he is likely to succeed on the merits and nor could he demonstrate irreparable harm without the injunction.

To succeed on the merits of his claim and obtain a permanent injunction, the record would have to demonstrate that there is ongoing deliberate indifference toward Plaintiff's Tourette's by prison officials. Plaintiff, however, has been given a low bunk permit and is receiving Tegretol for his Tourette's. Though he suggested that he may prefer to take Haldol, Plaintiff's preference for a different medication is not sufficient to demonstrate deliberate indifference, particularly when he testified that he is better off taking Tegretol than not taking it. *See Holloway*, **supra, at 1074**. Plaintiff's admitted benefit from Tegretol also precludes a finding that he will suffer irreparable harm without a preliminary injunction. The Tegretol is providing some benefit for Plaintiff's Tourette's, and there is nothing in the record to indicate that Plaintiff would suffer harm by taking Tegretol instead of Haldol. The undersigned notes, however, that the issue of the administration of Tegretol versus Haldol to Plaintiff could become an issue later

down the road as this matter develops.[5] The undersigned cannot take up that specific issue on the current record, however. Based on the record before the Court, the undersigned cannot recommend that the district judge enter a preliminary injunction.

Finally, the undersigned notes that the recommendation today is based, in part, on two understandings as represented by the Attorney General: First, that Plaintiff will continue to be administered medication for his Tourette Syndrome, and second, that Plaintiff will be seen by a physician upon his return to Sheridan. The undersigned expects that both of these understandings will be accurate.

## CONCLUSION

As Plaintiff is currently receiving Tegretol for his Tourette Syndrome, a preliminary injunction is not proper. The undersigned therefore **RECOMMENDS** that the district judge **DENY** Plaintiff's Motion for Preliminary Injunction (Doc. 2).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **June 30, 2017**.

---

[5] As previously noted, the plaintiff exhibited two episodes of involuntary tics during the hearing before the Court. It may be, as Plaintiff claims, that Haldol is the more appropriate medication to treat his condition.

**IT IS SO ORDERED**.
DATED: 6/13/2017

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge