IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DWAYNE J. MIDDLETON,

Plaintiff,

v.

C/O BERKLEY and
STEVEN MEEKS,

Defendants.                                    No. 17-cv-0547-DRH

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

**Introduction and Background**

Pending before the Court is an April 30, 2018 Report and Recommendation ("the Report") issued by Magistrate Judge Stephan C. Williams (Doc. 74). Magistrate Judge Williams recommends that the Court deny defendant Berkley's motion for summary judgment on the issue of exhaustion of administrative remedies. The parties were allowed time to file objections to the Report. On May 17, 2018, Berkley filed an objection to the Report (Doc. 77). Based on the applicable law, the record and the following, the Court **ADOPTS** the Report in its entirety.

Plaintiff Dwayne J. Middleton brought this *pro se* action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. According to the complaint, defendants have been deliberately indifferent to plaintiff's serious

medical condition. Specifically, plaintiff contends he suffers from Tourette's syndrome, a neurological disease which interferes with his ability to control his body. Plaintiff contends he has been denied medication for his condition and, as a result, has suffered several injuries because he is unable to control his body.

On May 25, 2017, the Court screened Middleton's complaint, found that it survived review and construed the complaint as containing a request for preliminary injunction (Doc. 4). Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Williams, after conducting a hearing, submitted a Report and Recommendation recommending that the Court deny the request for preliminary injunction (Doc. 23). On July 5, 2017, the Court adopted the Report and Recommendation and denied the motion for preliminary injunction (Doc. 29).

Thereafter, defendant Berkley filed a motion for summary judgment as to the issue of exhaustion of administrative remedies (Docs. 60 & 61). Berkley contends that on July 11, 2017, after this lawsuit was filed, Middleton sent a grievance to the Administrative Review Board that had not been previously reviewed at the institution. Middleton opposed the motion (Doc. 65). On April 26, 2018, Magistrate Judge Williams held a *Pavey*[1] hearing on the motion for summary judgment and to assess the credibility of the conflicting accounts about Middleton's use of the grievance process (Doc. 73). Subsequently, on April 30, 2018,

---

1 *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)(indicating that a judge, not a jury should resolve initial disputes about exhaustion in prisoner cases, and setting forth the procedures to be followed in doing so).

Magistrate Judge Williams, pursuant to 28 U.S.C. § 636(b)(1)(B), submitted the Report recommending that the Court deny defendant Berkley's motion for summary judgment on the issue of exhaustion of administrative remedies. Specifically, Judge Williams found that "[D]efendant has failed to carry his burden and demonstrate that he is entitled to summary judgment." (Doc. 74, pg. 8). The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" on or before May 17, 2018. Berkley did file an objection to the Report (Doc. 77). Based on the record and the following, the Court adopts the Report in its entirety and denies defendant Berkley's motion for summary judgment on the issue of exhaustion.

## Facts

The facts set forth in this section are limited to those necessary for this Court to review the Report. A more comprehensive recitation of the facts is contained in the Report. Middleton filed this lawsuit on May 23, 2017. At this time, Middleton was housed on the receiving wing of Menard Correctional Center. During this time, Berkley was a correctional officer assigned to the receiving wing.

Middleton testified that he asked Berkley for a grievance on May 5, 2017, on May 6, 2017 and on May 16, 2017 and that Berkley never provided him a grievance. Berkley testified that he does not recall Middleton asking him for grievances and that if Middleton would have asked for a grievance he would have tried to resolve the problem informally as he believed that was what the grievance code required

and if an issue still remained, he would have provided a grievance. Berkley also testified that if Middleton did not have a grievance form, he would have told Middleton to write the grievance on a piece of paper, also known as a "kite," and that Berkley would have placed it in a the grievance box.

Middleton admitted that he did not ask anyone in the law library for a grievance and Middleton also admitted to indicating in his complaint that he did not complete the grievance process. Middleton was transferred from Menard to Sheridan Correctional Center on May 25, 2017.

On July 11, 2017, the Administrative Review Board ("ARB") received a written grievance from Middleton. Prior to this time, the ARB did not receive a written grievance from Middleton.

## **Legal Standards**

The Court's review of the Report is governed by 28 U.S.C. § 636(b)(1), which provides in part:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b) also directs that the Court must only make a *de novo* determination of those portions of the report and recommendation to which specific written objection has been made. *Johnson v. Zema Sys. Corp.*,

170 F.3d 734, 739 (7th Cir. 1999). If no objection or only a partial objection is made, the Court reviews those unobjected portions for clear error. *Id*. In addition, failure to file objections with the district court "waives appellate review of both factual and legal questions." *Id*. Under the clear error standard, the Court can only overturn a Magistrate Judge's ruling if the Court is left with "the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative

defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v.* Johnson, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Id*.

In *Pavey*, the Seventh Circuit instructed district courts to conduct a hearing where "exhaustion is contested" to determine whether a plaintiff has exhausted his administrative remedies. *Pavey*, 544 F.3d at 742. And in holding that hearing, a court may credit the testimony of one witness over another. *See Pavey v. Conley (Pavey II)*, 663 F.3d 899, 904 (7th Cir. 2011)(affirming factual

findings of a magistrate judge, whose Report included factual findings that the plaintiff was not credible). In other words, and unlike other summary judgment motions, the very purpose of *Pavey* is to allow a judge to resolve swearing contests between litigants. So while courts typically undertakes *de novo* review of the portions of the Report to which a party objects, the courts will give great deference to factual findings and credibility determinations made in the Report. *Pavey II*, 663 F.3d at 904. *See also Towns v. Holton*, 346 Fed.Appx 97, 100 (7th Cir. 2009)(great deference to credibility findings based on demeanor); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)("*De novo* determination is not the same as a *de novo* hearing. The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations).

Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, *Pavey* set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent of prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there

is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any findings made by the district judge in determining that the prisoner exhausted his administrative remedies.

*Id*. at 742.

A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. Under the current grievance procedures, which went into effect April 1, 2017, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. 20 Ill. Adm. Code §504.10.[2] The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

*Id*. "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who] shall advise the offender of the decision in writing within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill.

---

2 The relevant portion of the current code states: "An offender may file a written grievance on a grievance form that shall be made available in all living units." Ill. Adm. Code 504.810(a) (2017). 504.810(a) no longer makes reference to informal resolution.
Page **8** of **11**

Admin. Code §504.830(e). If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." 20 Ill. Admin. Code §504.850(a). "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

## Analysis

Here, Berkley's objection to the Report largely reiterates things already argued in the motion for summary judgment. The Court finds that his objection merely takes umbrage with the Report in that Berkley argues that the fault lies with Middleton in failing to exhaust and not him. After reviewing the motion for

summary judgment, the Report and the objection, the Court finds no error or deficiency in Judge Williams' credibility determinations. Judge Williams provided a sound analysis of the testimony. Specifically, Judge Williams found:

> "The undersigned finds that Defendant has failed to carry his burden and demonstrate that he is entitled to summary judgment. The testimony given by both Plaintiff and Defendant are clearly in contradiction with one another. The undersigned, however, is not able to say that he finds either party not credible. Plaintiff was able to provide details and specifics in his testimony that he requested grievances, and the undersigned cannot point to any part of Plaintiff's testimony or demeanor that would demonstrate Plaintiff was lying. If Plaintiff did in fact ask for grievances, but was denied them, then he is deemed to have exhausted. When prison officials deny an inmate a grievance, the inmate's attempt at exhaustion are thwarted, his administrative remedies are no longer available to him, and he may proceed with a lawsuit. *See Dole*, 438 F.3d at 809 (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources). The undersigned also notes that though Plaintiff admitted that he did not ask the law library or nursing staff for grievances, the grievance code does not require him to do so. The code mandates that grievance forms "shall be made available in all living units." 20 Ill. Adm. Code § 504.810(a). If a correctional officer in Plaintiff's wing denied him access to grievance forms, then such conduct ran afoul of the grievance code.
>
> Though Defendant Berkley testified that he does not recall Plaintiff ever asking him for a grievance, and though the undersigned finds Berkley to be a credible witness, the fact remains that the summary judgment burden is placed on the defendant. Though Defendant was credible, Plaintiff was also credible, and the undersigned simply cannot say that Defendant's testimony is sufficient to overcome his burden.
>
> In addition, Defendant's testimony also raises concerns regarding his knowledge of the proper grievance process. For instance, Defendant Berkley testified that even if no grievance forms were available to Plaintiff, he would have told Plaintiff to write a grievance on a kite and then would have made sure the kite was placed in the grievance box.

> In the undersigned's experience, however, he does not recall ever encountering a situation where prison officials have accepted a grievance written on anything other than a grievance form. Moreover, as already mentioned, the administrative code makes clear that grievance *forms* are to be available in all living units. *Id.*"

(Doc. 74, pgs. 8-10).

While Judge Williams found both Middleton and Berkley to be credible witnesses, he specifically found that "Berkley's testimony and other evidence provided are insufficient to meet his burden on summary judgment." (Doc. 74, pg. 10). The record before the Court provides no reason for the Court to doubt Judge Williams' determination. Furthermore, based on the record, it is clear to the Court that defendant Berkley did not carry his burden with regard to the exhaustion issue.

## Conclusion

Accordingly, the Court **ADOPTS** the Report in its entirety (Doc. 74) and **DENIES** defendant Berkley's motion for summary judgment as to the exhaustion issue (Doc. 60).

**IT IS SO ORDERED.**

Judge Herndon
2018.05.22
09:02:43 -05'00'

United States District Judge